Argued and submitted July 20, affirmed December 5, 2007

Mark O'HARA,
Mary Jane O'Hara, Katelyn O'Hara,
and Kyle O'Hara, a minor child under 18,
*Plaintiffs-Appellants,*

*v.*

DAVID BLAIN CONSTRUCTION, INC.,
an Oregon corporation;
David Blain, individually;
and Home Comfort Heating & Air Conditioning, Inc.,
an Oregon corporation,
*Defendants,*

*and*

BERRY ARCHITECTS, PC,
an Oregon professional corporation;
Loren Berry, individually; Ronald N. Eakin, Ltd.;
and Ronald N. Eakin, individually,
*Defendants-Respondents.*

DAVID BLAIN CONSTRUCTION, INC.,
an Oregon corporation,
*Third-Party Plaintiff,*

*v.*

JOHN M. BAUMGARTNER, BUILDER,
an Oregon limited liability company;
The Truss Company, Inc., an Oregon corporation;
Globe Electric; Gibson Steel, an Oregon corporation;
and Lincoln Windows,
*Third-Party Defendants.*

Lane County Circuit Court
160417923; A130545

173 P3d 1257

Stuart M. Brown argued the cause and filed the briefs for appellants.

Lawrence F. Cooley argued the cause and filed the brief for respondents Loren Berry and Berry Architects, PC.

Wade R. Keenon argued the cause and filed the brief for respondents Ronald N. Eakin, Ltd., and Ronald N. Eakin.

Before Edmonds, Presiding Judge, and Haselton and Wollheim, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Plaintiffs appeal after the jury returned a verdict for the Eakin defendants (Ronald N. Eakin individually and Ronald Eakin, Ltd.) and against the Berry defendants (Loren Berry individually and Berry Architects, PC) on plaintiffs' claim for negligence due to the presence of toxic mold in their newly constructed residence. The jury also found for the Berry defendants on plaintiffs' breach of contract claim. We affirm.

On appeal, plaintiffs make six assignments of error. Although we have considered fully the parties' arguments regarding each assignment, a detailed explanation of our reasoning as to each argument, in our view, would not benefit the bench or the bar. We write to address only those issues that would be of such benefit.

For the purposes of providing background, we take the following factual overview from the allegations in plaintiffs' first amended complaint. Plaintiffs assert that, due to a defective remodeling of their previous home, they were exposed to toxic mold and microtoxins. In 2002, they decided to build a new house, taking special care to protect against toxic mold growth. Plaintiffs contracted with the Eakin defendants to act as their construction consultant in building the new house. Plaintiffs also contracted with the Berry defendants to design and oversee the construction of the new house. Defendant David Blain Construction Co. (Blain), which is not a party to this appeal, was the general contractor for the construction project.

Blain began constructing the house in the latter half of 2002. However, the house was not finished when Oregon's winter rains arrived, and mold was discovered in the house. According to plaintiffs, they began experiencing medical problems due to the mold after they moved in and had to hire remediation specialists to remove the mold and remedy other defects in the construction.

Plaintiffs brought this action for personal injury and property damage in September 2004. The operative complaint, the first amended complaint, was filed in December

2004. It alleges, in part, that the Berry defendants were negligent in failing to require Blain to correct defective construction that resulted in plaintiffs' damages and that they breached their agreement with plaintiffs to oversee the construction. As to the Eakin defendants, plaintiffs allege that they breached their duty to inspect and ensure that the residence was constructed as designed. The case went to trial in July and August 2005, and the jury returned a verdict finding that the Berry defendants were negligent, that the Eakin defendants were not negligent, and that the Berry defendants had not breached their contract with plaintiffs. As the result of the jury's verdict, plaintiffs obtained judgment against the Berry defendants in the amount of $31,620, and the trial court also awarded costs to plaintiffs in the amount of $6,215.

■　In their first assignment of error, plaintiffs argue that the trial court erred when it denied their motion to file a second amended complaint approximately 30 days before the date of trial. The proposed amendment, in part, sought to add a claim for damages of $2.5 million for loss of income and the increased cost of obtaining similar housing. It also would have added nine new specifications of negligence against the Berry defendants. The trial court observed that the timing of plaintiffs' motion and the scope of the amendment would "make it really impossible to try this case in the time frame that it will be tried in." In light of the obvious prejudice to defendants' ability to defend against the amended claims, had they been allowed, and the timing of plaintiffs' motion as it affected the court's docket, the trial court did not abuse its discretion. *See Safeport, Inc. v. Equipment Roundup & Mfg.*, 184 Or App 690, 699-701, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003) (setting out applicable abuse of discretion analysis).

■　Plaintiffs argue in their second assignment of error that the trial court erred in excluding evidence that Blain did not carry insurance that provided coverage for damages arising from toxic mold. Plaintiffs' contract with the Berry defendants included the requirement that Berry obtain a certification that Blain carried insurance for harm caused by mold. Plaintiffs assert that the Berry defendants breached that agreement by failing to ascertain that Blain had the required

mold insurance. According to the evidence, Blain did not have the insurance coverage required by the agreement; his insurance policy specifically excluded coverage for harm caused by mold. However, plaintiffs' first amended complaint did not expressly allege that the Berry defendants had breached the contract by failing to ascertain that Blain carried the insurance coverage contemplated by plaintiffs' agreement. That allegation was one of the amendments proposed by the second amended complaint.

After the trial court denied leave to file the second amended complaint, plaintiffs relied on paragraph 29 of their first amended complaint to allege the claim of breach regarding Blain's insurance coverage. That paragraph alleges that

> "[i]n administering/managing the construction contract, Berry committed several errors and omissions. Berry's errors and omissions include, *but are not limited to * * *.*"

(Emphasis added.) Nine specifications of breach followed. However, Berry's alleged failure to ensure that Blain carried the contractually required mold insurance coverage is not included within those specifications.

On appeal, plaintiffs argue that the "not limited to" language adequately pleads the claim that the Berry defendants breached their agreement with plaintiffs to certify that Blain carried insurance coverage for harm caused by mold and, therefore, the evidence offered by plaintiffs regarding Blain's lack of insurance should have been admitted by the trial court under that allegation. The Berry defendants respond, in part, that plaintiffs were not entitled to adduce evidence on a claim that was not expressly pleaded in the first amended complaint in light of the court's ruling regarding the filing of the second amended complaint. We agree. ORCP 18 A provides that "[a] pleading which asserts a claim for relief * * * shall contain * * * [a] plain and concise statement of the ultimate facts constituting a claim for relief[.]" There is no language in paragraph 29 of the first amended complaint that alleges ultimate facts asserting that the Berry defendants breached their contract with plaintiffs by failing to ascertain that Blain had insurance coverage for the risk of damage from toxic mold.

■ In plaintiffs' third assignment of error, they argue that the trial court "erred in excluding testimony by any witness offering an opinion as to whether plaintiff Katelyn O'Hara's endometriosis was a result of exposure to toxic mold." Under ORCP 44 C, in a civil action where a claim is made for damages for injuries to a party, "upon the request of the party against whom the claim is pending, the claimant shall deliver to the requesting party a copy of all written reports and existing notations of any examinations relating to injuries for which recovery is sought[.]" Under ORCP 44 D(2), a trial court has the discretion to exclude a physician's testimony for a party's failure to comply with ORCP 44 C.[1]

■ In this case, defendants sent requests for production of medical records to plaintiffs in December 2004 and January 2005, and plaintiffs provided some documents but no information that indicated that endometriosis was a condition that resulted from defendants' alleged negligence. That information first appeared in the records of Dr. Gray received by defendants 16 days before trial. On the second day of trial, defendants orally moved to exclude testimony by various witnesses regarding the subject of endometriosis, arguing that they were prejudiced by plaintiffs' belated production. Specifically, defendants argued that, to be able to defend the claim, they would have had to receive Gray's records in time to have Katelyn examined by a medical expert. Defendants pointed out to the court that Katelyn had testified at her deposition that, although she had undergone laparoscopies to address her condition, she did not assert that there was any connection between the toxic mold condition and the endometriosis. Moreover, the first amended complaint did not contain any specific allegation that Katelyn suffered from endometriosis caused by toxic mold. Also, defendants noted that the information about the alleged

---

[1] ORCP 44 D(2) provides:

"If a party fails to comply with sections B and C of this rule, or if a physician or psychologist fails or refuses to make a detailed report within a reasonable time, or if a party fails to request that the examining physician or psychologist prepare a written report within a reasonable time, the court may require the physician or psychologist to appear for a deposition or *may exclude* the physician's or psychologist's testimony if offered at the trial."

(Emphasis added.)

connection between endometriosis and toxic mold was contained within 800 pages of Gray's records, records that were furnished shortly before trial. After hearing arguments from both parties, including plaintiffs' explanation for why discovery had not been furnished earlier, the trial court granted defendants' motion to exclude any testimony regarding the alleged connection between endometriosis and toxic mold. We have reviewed the parties' arguments on appeal, and in light of the provisions of ORCP 44 D(2), we are not persuaded that the trial court's ruling constitutes an abuse of its discretion.[2]

■■    In plaintiffs' fourth assignment of error, they assert that the trial court erred in denying their motion to reopen the evidentiary phase of the trial to allow Gray to testify by telephone. Again, we review the trial court's decision for an abuse of discretion. *Naito v. Naito*, 178 Or App 1, 20, 35 P3d 1068 (2001). During plaintiffs' case-in-chief, Gray testified about his diagnosis and treatment of plaintiffs. Gray testified that his opinions were based on tests performed by Immunosciences Lab, Inc. He was not cross-examined about Immunosciences' certification or any problems with its testing procedures. After he finished testifying, Gray returned to his home in Arizona.

■    Defendants, in their case-in-chief, presented evidence and transcripts that cast doubt on the validity of the testing procedures relied on by Gray. After defendants rested, and a day after plaintiffs had completed the rebuttal portion of their evidence and had rested, plaintiffs sought leave to allow Gray to testify by telephone from Arizona and to present a letter from him explaining why the issues raised by defendants in their case-in-chief had no bearing on the specific subject matter of his testimony. The trial court denied plaintiffs' motions. Under the circumstances, we hold that the trial court did not abuse its discretion in refusing to

_____

[2] The "discretion" accorded under ORCP 44 D(2) affords a trial court some latitude in determining what sanction, if any, is proper for the failure to comply with sections B and C of the rule. If the trial court's decision is within the range of legally correct choices and produced a permissible outcome, then the trial court did not abuse its discretion. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). Given the circumstances before the court, the trial court's decision to exclude testimony about the alleged connection between endometriosis and toxic mold was within the range of legally correct choices authorized by the rule.

reopen the evidentiary phase of the trial at that point in time. Trial courts have the authority to regulate the conduct of a trial, and it was within the authority of the court to limit plaintiffs to the rebuttal evidence they had offered after defendants offered their evidence.[3]

■     In plaintiffs' fifth assignment of error, they assert that the trial court erred in concluding that the jury had determined that plaintiffs Mark and Mary Jane O'Hara had incurred total damages of $204,000, rather than damages of $204,000 each. At the close of the trial, the jury was given a special verdict form. Question four on that form asked the jury, "What are each plaintiff's damages?" In response, the jury awarded economic damages totaling $204,000, with the amounts handwritten in:

"4.   What are each plaintiff's damages?

"A.   Economic Damages:

"1. Completion Cost Damages:          $  35,007

"2. Construction Defect Damages:   $120,000

"3. Remediation Damages:                $  40,000

"4. Past Medical Expenses:

Mark O'Hara                       $  0

Mary Jane O'Hara          $  0

Katelyn O'Hara              $  0

Kyle O'Hara                     $  0

"5. Future Medical Expenses:

Mark O'Hara                       $  0

Mary Jane O'Hara          $  0

Katelyn O'Hara              $  0

Kyle O'Hara                     $  0

"6. Other Economic Damages:          $    9,000

"B.   Non-Economic Damages:          $  0      "

---

[3] Indeed, the record does not disclose why plaintiffs did not procure Gray's attendance as part of the rebuttal portion of their evidentiary presentation.

The jury had previously found that the Berry defendants were 15.5 percent negligent. Because plaintiffs believed that the jury intended to award each plaintiff (Mark and Mary Jane) damages of $204,000 (totaling $408,000), they submitted a judgment against the Berry defendants for $63,240 (15.5 percent of $408,000) after the trial had ended and the jury had been dismissed. On the other hand, because the Berry defendants contended that the $204,000 figure in the verdict was a combined award to both plaintiffs, they submitted a judgment for $31,620 (15.5 percent of $204,000). The trial court agreed with defendants and awarded damages of $31,620.

Plaintiffs argue on appeal that the trial court erred when it entered a verdict for $31,620 instead of $63,240. In our view, the verdict form is patently ambiguous. It could be reasonably interpreted to inquire "what are each individual plaintiff's damages" or to inquire "what total damages should plaintiffs, as a group, receive." We need not decide, however, what the jury intended by their verdict because plaintiffs' failure to object to the verdict before the jury was discharged deprived the trial court of the opportunity to address that question to the jury.

In *Null v. Siegrist*, 262 Or 264, 268-69, 497 P2d 644 (1972), the court explained,

"The law is well established in this state in cases similar to the case at bar that if counsel is present, or had a reasonable opportunity to be present, and made no objection or challenge to the form of the verdict returned by the jury, the insufficiency or irregularity of the verdict is waived."

Here, plaintiffs objected neither to the verdict form prior to its submission nor to the receipt of the verdict after the jury had reached a decision. In fact, after the court read the verdict and made inquiries of the jury, plaintiffs indicated they had no questions for the jury. Had plaintiffs properly objected before the dismissal of the jury, the trial court could have queried the jury about its intention. By not objecting, plaintiffs are deemed to have waived the right to claim on appeal that the jury intended to award $63,240 in damages. *See Building Structures, Inc. v. Young*, 328 Or 100, 113, 968 P2d 1287 (1998) (holding that the failure to object to a defective

verdict at a time when the jury was present operated as a waiver of that ground for a new trial). Consequently, the trial court did not err in entering judgment for $31,620.

Plaintiffs' sixth assignment of error concerns a deduction by the trial court to plaintiffs' claim for costs. Defendants counter that, under the circumstances, it was within the trial court's discretion to disallow some of plaintiffs' requested costs. We agree with defendants.

Affirmed.