Submitted on remand from the Oregon Supreme Court February 20, 2009, affirmed on appeal and on cross-appeal January 20, respondent - cross-appellant's petition for reconsideration filed March 3, allowed by opinion June 9, 2010 See 235 Or App 524, _____ P3d _____ (2010)

## H. H. TAYLOR,
C. A. Taylor,
and Taylor & Taylor, Inc.,
an Oregon corporation,
*Plaintiffs-Appellants*
*Cross-Respondents,*

*v.*

## RAMSAY-GERDING CONSTRUCTION COMPANY,
an Oregon corporation,
*Defendant,*

*and*

## CHEMREX, INC.,
a foreign corporation,
*Defendant-Respondent*
*Cross-Appellant.*

## RAMSAY-GERDING CONSTRUCTION COMPANY,
an Oregon corporation,
*Third-Party Plaintiff,*

*v.*

## TFC ENTERPRISES, INC.,
an Oregon corporation,
dba Finishers Drywall;
ChemRex, Inc.,
a foreign corporation;
Century West Engineering Corporation,
an Oregon corporation;
Wyatt Architects and Associates, P. S.;
and Donald Trail,
*Third-Party Defendants.*

Lincoln County Circuit Court
015188; A127434

226 P3d 45

James N. Westwood and Stoel Rives LLP and David A. Hilgemann and Law Offices of David A. Hilgemann for appellants - cross-respondents.

Todd S. Baran for respondent - cross-appellant.

Ralph C. Spooner, Melissa J. Ward, and Spooner & Much, P.C., for *amicus curiae* Ramsay-Gerding Construction Company.

Before Schuman, Presiding Judge, and Landau, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

This case is before us on remand from the Oregon Supreme Court. In our previous decision, we determined in part that, for the purposes of plaintiffs' claim for breach of an express warranty, there was insufficient evidence in the record to permit a jury to find that defendant's territory manager had apparent authority to warrant a stucco siding system manufactured by defendant and installed in plaintiff's hotel. We therefore reversed and remanded for entry of judgment on that claim in favor of defendant. *Taylor v. Ramsay-Gerding Construction Co.*, 215 Or App 670, 172 P3d 251 (2007), *rev'd*, 345 Or 403, 196 P3d 532 (2008).

The Supreme Court allowed review and reversed our decision, concluding that there was sufficient evidence in the record on the apparent authority issue and that the trial court therefore did not err in submitting plaintiffs' breach of warranty claim to the jury. 345 Or at 411-14. The court remanded the case to us for consideration of the parties' previously unaddressed assignments of error, relating to whether plaintiffs' claim was asserted within the pertinent statute of limitations, whether the issue of plaintiffs' comparative fault was correctly submitted to the jury and factored into the judgment, whether the trial court abused its discretion in bifurcating the trial, and whether the judgment entered was inconsistent with the verdict. We turn to that task, beginning with a brief overview of the relevant historical and procedural facts, which are undisputed, and affirm.

H. H. (Todd) Taylor and his wife, C. A. Taylor, (plaintiffs) owned a hotel in Lincoln City, and Ramsay-Gerding Construction Co. (Ramsay-Gerding) was the general contractor for the hotel's construction. Ramsay-Gerding hired a subcontractor who, among other tasks, installed a stucco siding system manufactured by ChemRex, Inc. (defendant) on the exterior walls of the hotel. Construction began in May 1998, and application of the stucco siding commenced in late August of that year.

The following month, Todd Taylor became concerned about certain components of the stucco siding system. Plaintiffs met with representatives of Ramsay-Gerding and with defendant's "territory manager" for Oregon, McDonald, as

well as the stucco installer. At the meeting, McDonald represented to Taylor that the stucco system came with a five-year warranty. Installation of the system was resumed. In July of the following year, McDonald sent Taylor a letter confirming that defendant warranted the stucco system for five years beginning in March 1999.

In October 2001, after discovering what appeared to be defects in the stucco system, plaintiffs initiated an action against Ramsay-Gerding for breach of the construction contract. Ramsay-Gerding answered and, as an affirmative defense, asserted in part that plaintiffs were negligent in selecting the stucco system. In April 2002, Ramsay-Gerding filed third-party claims against defendant for negligence and breach of an express warranty and for indemnity and contribution; it also filed various claims against other entities involved in the design and construction of the hotel. Defendant answered, asserting, among other affirmative defenses, that plaintiffs' damages were caused by their own fault or negligence and that of other third-party defendants.

In August 2003, plaintiffs amended their complaint to add a breach of express warranty claim against defendant. In April 2004, plaintiffs filed their second amended complaint, in which they added the operator of the hotel, Taylor & Taylor, Inc. (the development company), as a plaintiff on the breach of express warranty claim. Defendant answered, denying that it had warranted the stucco system or breached such a warranty.

In May 2004, a hearing was held on plaintiffs' and Ramsay-Gerding's motion to bifurcate the trial to allow their breach of express warranty claims against defendant to be tried first. As we explained in our prior opinion:

"Ramsay-Gerding contended that trial of those claims would not require the presence of the engineering and architectural firms, which were named only in the third-party complaint for indemnity and contribution purposes; it argued that the trial on the breach of warranty claims therefore would be 'significantly shorter' yet would resolve 'probably 90 percent' of plaintiffs' case. [Defendant] responded in part that it was appropriate, indeed necessary, to try all of the claims together, because plaintiffs

were asserting construction defects as well as product defects, because [defendant] was asserting cross-claims for indemnity and contribution against the [project's] design professional and Ramsay-Gerding as provided in ORCP 22 B, and because all of the same witnesses and evidence would be relevant to all of the claims. Ramsay-Gerding replied in part that comparative fault was not a defense to a breach of warranty claim; plaintiffs joined in that assertion."

215 Or App at 677. The trial court granted the motion to bifurcate the trial of the breach of warranty claims.

At the close of trial, the jury found that defendant had provided an express warranty of the stucco system to plaintiffs; that defendant had breached the warranty; that plaintiffs had suffered damages in the amount of $775,000; that defendant was 51 percent at fault and plaintiffs were 49 percent at fault; and that the development company had not filed its own breach of warranty claim within the applicable limitations period and therefore was barred from bringing that claim. The jury separately found that defendant had breached one or more express warranties to Ramsay-Gerding and, as between defendant, Ramsay-Gerding, and plaintiffs, found that defendant was 35 percent at fault, Ramsay-Gerding was 35 percent at fault, and plaintiffs were 30 percent at fault. The trial court entered a limited judgment against defendant, awarding plaintiffs 51 percent of their damages, or $395,250, and dismissing the development company's claim.[1]

Plaintiffs appealed, assigning as error the trial court's submission to the jury of defendant's comparative fault defense and its failure to dismiss defendant's statute of limitations defense against the development company. Defendant cross-assigned error to the trial court's denial of its motion for a directed verdict on the development company's claim. Defendant also cross-appealed, assigning error to the trial court's denial of its motion for a directed verdict in its favor on plaintiffs' claim; the court's withdrawal from the

---

[1] As we noted in our previous decision in this case, the judgment entered by the trial court did not dispose of Ramsay-Gerding's claim against defendant; we therefore dismissed Ramsay-Gerding's appeal, and Ramsay-Gerding has appeared here as *amicus curiae*.

jury of its statute of limitations defense against plaintiffs; the court's entry of a judgment that did not conform to the jury's verdict; and the court's order bifurcating the trial of the breach of express warranty claims.

In our prior decision, we began by considering defendant's first assignment of error on cross-appeal, pertaining to the trial court's denial of its motion for a directed verdict on plaintiffs' claim for breach of express warranty. *Id.* at 680. As previously discussed, we determined that there was insufficient evidence in the record regarding the apparent authority of McDonald, defendant's territory manager for Oregon, to warrant the stucco system and that the trial court therefore had erred in denying defendant's motion for a directed verdict on the breach of warranty claim. *Id.* at 680-90. We further determined that plaintiffs had failed to preserve the issue raised in their second assignment of error on appeal, relating to the trial court's submission to the jury of defendant's statute of limitations defense against the development company's breach of warranty claim. *Id.* at 690-94. Finally, we determined that our disposition of those two assignments of error obviated the need to address any of the parties' other assignments of error. *Id.* at 694. We reversed and remanded for entry of judgment in defendant's favor. *Id.* Plaintiffs then sought review of our disposition of defendant's assignment of error relating to McDonald's apparent authority to issue a warranty; as noted, the Supreme Court reversed and remanded the case to this court for further proceedings.[2] We now address the parties' remaining assignments of error.

## A. *Withdrawal from Jury of Limitations Defense against Plaintiffs' Claim*

Because it could obviate the need to address other assignments of error, we begin with defendant's second assignment of error on cross-appeal, in which it asserts that

---

[2] Plaintiffs did not seek review in the Supreme Court of our determination in our previous decision that plaintiffs had failed to preserve their claim of error relating to the trial court's submission to the jury of defendant's statute of limitations defense against the development company's claim for breach of express warranty. Accordingly, our disposition of that issue remains in force. In addition, in light of that disposition, we need not address defendant's cross-assignment of error relating to the trial court's denial of its motion for a directed verdict against that claim on statute of limitations grounds.

the trial court erred in "effectively striking [defendant's] stat-
ute of limitations defense against" plaintiffs' breach of war-
ranty claim. According to defendant, it preserved that claim
of error by moving for a judgment on the pleadings on that
ground—a motion that the trial court denied on the ground
that plaintiffs' claim for breach of warranty related back to
when defendant received a summons from Ramsay-Gerding
in the context of the latter's third-party claim against defen-
dant for breach of warranty.

In this court, defendant argues, in essence, that the
operative complaint for statute of limitations purposes was
plaintiffs' first amended complaint, in which plaintiffs added
their breach of express warranty claim against defendant;
that that complaint, which was filed on August 8, 2003, can-
not properly relate back either to plaintiffs' original com-
plaint or to Ramsay-Gerding's third-party complaint against
defendant; that there was evidence from which the jury could
find that plaintiffs discovered, or should have discovered,
defendant's alleged breach more than four years before they
filed the first amended complaint; and that the trial court
therefore erred in removing that issue from the jury.[3] Specif-
ically as to the relation-back issue, defendant argues that
plaintiffs' first amended complaint cannot properly relate
back to their original complaint because the first amended
complaint added both a new defendant and a new claim;
defendant further argues that plaintiffs' first amended com-
plaint cannot relate back to Ramsay-Gerding's third-party
complaint against defendant because that complaint was not
plaintiffs' original pleading, as required by ORCP 23 C.

Plaintiffs respond that, to the extent that defendant
is asserting that the trial court erred in removing the statute
of limitations defense from the jury, defendant invited that

---

[3] *See* ORS 72.7250(1) (establishing a four-year statute of limitations for actions
for breach of contracts for sale); ORS 72.7250(2) (providing that "[a] cause of action
accrues when the breach occurs" and providing that a "breach of warranty occurs
when tender of delivery is made, except that where a warranty explicitly extends to
future performance of the goods and discovery of the breach must await the time of
such performance[,] the cause of action accrues when the breach is or should [be]
discovered"). At trial, defendant agreed that this case involved a warranty of future
performance—specifically, a warranty against the rusting of certain galvanized
metal components of the stucco system—and contended that, accordingly, the
cause of action accrued when the rust was first discovered.

error by agreeing at trial that the jury would not have to answer a question on a proposed special verdict form relating to the timeliness of plaintiffs' claim.[4] Plaintiffs also argue that, in any event, the trial court correctly denied defendant's motion for judgment on the pleadings on the limitations issue, because the pleadings did not support defendant's position on the running of the statute. Plaintiffs point out that the trial court later denied defendant's motion for summary judgment on the same issue and that defendant does not assign error to that ruling; plaintiffs reason that, if the pleadings and evidence, together, did not demonstrate that the limitations period for plaintiffs had expired, the pleadings alone could not have done so.

Defendant replies that it does not contend that the trial court erred in denying its motion for judgment on the pleadings, but rather intends to assign error only to the trial court's removal of the statute of limitations issue from the jury.

■ We conclude that defendant waived any objection to the trial court's action in that regard. Again, in support of its motions for judgment on the pleadings and for summary judgment, defendant argued that, as a matter of law, the four-year limitations period continued to run until plaintiffs filed their claims against defendant; when the trial court ruled against defendant on that issue, defendant took exception to the ruling. In addition, at the close of trial, in moving for a directed verdict against plaintiffs on statute of limitations grounds, counsel for defendant noted for preservation purposes that the trial court previously had ruled against defendant as to its legal argument on that point. However, as plaintiffs note, at the close of the evidentiary portion of the trial, the trial court determined that there was a factual issue

---

[4] We have not found in the record a proposed verdict form posing that question as to the individual plaintiffs. We understand the question to have been identical or similar to the first question on the second special verdict form, which asked whether the development company filed its breach of warranty claim within the time provided by law. As to the latter question, the trial court orally instructed the jury that the development company's claim was filed on April 1, 2004, and that, to prevail on its statute of limitations defense, defendant had to prove that, before April 1, 2000, the development company knew or should have known "facts which would make a reasonable person aware of a substantial possibility that [defendant's] alleged breach of warranty caused the [development company] some harm."

for the jury relating to whether the development company brought its claim within the statute of limitations, but that the jury did not need to decide that issue as it pertained to the individual plaintiffs. At the time that the trial court made that determination, counsel for defendant neither renewed his previous objections nor objected on any other ground.

As described above, in its opening brief on cross-appeal, defendant reiterates its legal argument that, under ORCP 23 C, plaintiffs' first amended complaint—in which plaintiffs first asserted their claim for breach of warranty against defendant—properly did not relate back either to Ramsay-Gerding's third-party complaint or to plaintiffs' own original complaint and that, accordingly, plaintiffs' claim dates back only to the filing of their first amended complaint on August 8, 2003. Nevertheless, and particularly in light of its reply argument in this court, we understand the gravamen of defendant's assignment of error on appeal to be that there was evidence from which the jury could have found that plaintiffs should have discovered the alleged breach of warranty more than four years before that date—that is, that the trial court erred in taking that *factual* issue from the jury. Because, as discussed above, defendant effectively waived any objection to the trial court's doing so, it is not entitled to reversal on that ground. *See* ORCP 61 B (if, in submitting a matter to the jury, the court omits any issue of fact raised by the pleadings or the evidence, a party that does not demand submission of the issue before the jury retires is deemed to have waived the right to trial by jury on that issue); *see also O'Hara v. David Blain Construction, Inc.*, 216 Or App 384, 393, 173 P3d 1257 (2007) (where a party neither objected to the verdict form prior to its submission to the jury nor to receipt of the verdict, the party waived its objection to the verdict for appeal purposes (citing *Building Structures, Inc. v. Young*, 328 Or 100, 113-14, 968 P2d 1287 (1998))). We therefore reject defendant's second assignment of error on cross-appeal.

B. *Availability of Comparative Fault Defense*

We next consider whether, as argued in plaintiff's first assignment of error, the trial court erred as a matter of law in allowing the presentation of evidence of the parties'

comparative fault, in submitting that matter to the jury, and in entering a judgment that reduced plaintiffs' damages by their apportioned fault.

According to plaintiffs, the trial court erred in those respects because, as a matter of law, except in the context of product liability—not at issue here—an express warranty is a contract and comparative fault does not apply in breach of contract claims. Plaintiffs urge us to remand for entry of a judgment in their favor in the full amount of damages found by the jury.

Defendant first responds that plaintiffs failed to preserve the claimed error. According to defendant, plaintiffs were required to take such procedural steps against its comparative fault defense as moving to strike it, moving for a judgment on the pleadings, or moving for a directed verdict or a peremptory instruction. Defendant asserts that plaintiffs addressed defendant's comparative fault defense only in the context of the motion to bifurcate, which the trial court granted, and that, although Ramsay-Gerding objected to the defense in other contexts, plaintiffs never joined in those objections.

On the merits, defendant relies in part on ORS 31.600, providing in part that "contributory negligence shall not bar recovery in an action * * * to recover damages for * * * injury to * * * property if the fault attributable to the claimant was not greater than the combined fault" of others; defendant contends that the statute's reference in part to "fault" rather than "negligence" demonstrates that it applies to claims other than negligence claims. Defendant also asserts that contributory negligence was a defense to a breach of express warranty claim under Oregon common law and notes that other jurisdictions recognize the defense in that context. Alternatively, defendant argues that plaintiffs' purchase of its stucco system constituted a sales contract that was governed by the Uniform Commercial Code (UCC); that their breach of warranty claim therefore constituted a claim for consequential damages arising from an injury to property proximately resulting from a breach of warranty, as provided in ORS 72.7150(2)(b); and that, under that provision, a buyer's remedy extends only to damages proximately caused

by the breach and not to damages caused by the buyer itself or by third parties. Finally, defendant contends that, if comparative fault is not a defense to a breach of warranty claim, the proper remedy is a new trial on that claim; defendant reasons that, if the jury had not been permitted to apportion fault, it might have determined that the breach of warranty was not a substantial factor in causing plaintiffs' loss and might have assessed the amount of damages differently or found in defendant's favor.

As to preservation, plaintiffs reply that they raised the comparative fault issue in the context of the motion to bifurcate and did not "recede" from their position regarding that issue when it arose in later stages of the trial; they also argue that the trial court was not misled and would have understood that their opposition to the defense was ongoing. On the merits, plaintiffs dispute that either ORS 31.600 or the UCC provides for the defense in a breach of contract or breach of warranty action. Finally, plaintiffs contend that, even if the trial court erred, defendant is not entitled to a new trial. They argue that plaintiffs were the only parties who suffered prejudice from the error, in the form of a reduced damages award, and that that error requires reversal of only the amount of the award, not the verdict in their favor.

■ ■ We begin by determining whether plaintiffs preserved the claimed error. In order to preserve a claim of error for appeal, a party must provide the trial court with a specific enough explanation of its position "to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). The purpose of the requirement is " 'to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument.' " *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 500, 982 P2d 1117 (1999) (quoting *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995)).

In this case, as previously described, plaintiffs and Ramsay-Gerding moved to bifurcate the trial in order to separately try their breach of warranty claims against defendant. Defendant opposed the motion on the ground that other

parties were partly at fault for plaintiffs' damages. In that context, plaintiffs joined Ramsay-Gerding in asserting that "comparative negligence is not a defense to a breach of warranty" claim. The trial court granted the motion to bifurcate.

Next, before trial on plaintiffs' and Ramsay-Gerding's breach of warranty claims, Ramsay-Gerding moved to exclude evidence relating to its own comparative fault—specifically, any evidence of "construction defects which are not related to the exterior stucco system"—on the ground that the "concept of the comparative fault or negligence of the contractor would not be a defense to these warranty claims[.]" Plaintiffs did not expressly join in that motion. Defendant opposed it, arguing that it would present at trial significant evidence of possible construction-related causes of the problem with the stucco system. The trial court denied Ramsay-Gerding's motion to exclude the evidence.

The next day, before the parties gave their opening statements, Ramsay-Gerding expressed a related concern: that, as evidence relating to the causation of plaintiffs' damages, defendant intended to present evidence of certain "construction defects" that it had not alleged in its answer, such as the allegation that Ramsay-Gerding had failed to properly caulk the building.[5] Defendant's counsel responded, in part, "Comparative fault of the plaintiffs is in the case on the rust issues and the cause of those rust issues. I believe that alternative causation is in the case, that it's been raised in the answer." Defendant also noted that its answer alleged various construction-related failures by Ramsay-Gerding and noted that those were "the issues that we're going to be arguing as alternative causation here." Ramsay-Gerding reiterated that it objected to any evidence of its comparative fault and requested that the trial court clarify the purpose for which evidence of construction-related defects would be admitted; it asked for a continuing objection in that regard. Defendant in turn noted that the dispute regarding comparative fault illustrated why it had opposed, and was prejudiced by, bifurcation.

---

[5] Counsel for Ramsay-Gerding directed the court's attention to defendant's pleadings against "my client."

The court reiterated that defendant would be permitted to produce evidence that defendant "didn't breach the warranty and the problems were caused by other agents or problems. * * * With respect to the issue of comparative fault, I agree with" defendant. The court expressly declined to decide at that point whether, as defendant asserted, "plaintiffs' negligence needs to be on the jury form"; the court indicated that its jury instructions would "hopefully tie it together at the appropriate time." Ramsay-Gerding agreed. During those discussions, plaintiffs did not expressly join any of Ramsay-Gerding's arguments or offer any argument of their own regarding the applicability of defendant's "comparative fault" or alternative causation defense.

As pertinent to that issue, plaintiffs presented testimony by Smith, a waterproofing expert, regarding the water and rust damage in the hotel. On cross-examination, defendant asked Smith to identify "all of the conditions you observed at the building that caused you to suspect sources of water infiltration or water entrapment unrelated to rust." Ramsay-Gerding objected on the ground that, although defendant was purporting to establish alternative causation for the damages to the hotel, "[t]he form of these questions is going to wedge this case open into a contractor's negligence claim," whereas the bifurcated trial involved only the claims for breach of warranty. Plaintiffs joined Ramsay-Gerding's objection. The trial court ruled that defendant could examine the witness as to evidence that "bears some relationship between the damage complained of and the plaintiffs' warranty claim." On continuing cross-examination, defendant asked Smith whether, during his inspection of the hotel, "you observe[d] some conditions that led you to believe there was some problems with the construction of this building?" Ramsay-Gerding again objected; the court overruled the objection and Ramsay-Gerding asked for a continuing objection. Plaintiffs apparently did not expressly join the request for a continuing objection.

Consistently with its theory that plaintiffs' damages were caused by some means other than those alleged in plaintiffs' breach of warranty claim—such as Ramsay-Gerding's negligence in constructing the building—defendant submitted several proposed jury instructions relating to

the comparative fault of the parties, including, among other instructions, one regarding plaintiffs' judicial admissions that were pertinent to the issue of alternative causation of their damages; an instruction based on Uniform Civil Jury Instruction (UCJI) No. 20.01 regarding "Fault and Causation," which provided, among other things, that defendant "must prove two things by a preponderance of evidence: (1) that the plaintiffs were negligent in at least one of the ways claimed in [defendant's] answer; and (2) that the plaintiffs' negligence/fault was a cause of damage to the plaintiffs"; an instruction based on UCJI No. 21.02, relating to "Comparative Fault or Negligence," and an instruction based on UCJI No. 20.04 relating to "Common-Law Negligence—Duty."[6] (Uppercase omitted from jury instruction captions.) During the parties' and the court's lengthy discussion of the instructions, Ramsay-Gerding acknowledged that the instructions were relevant to defendant's alternative causation theory. Plaintiffs, for their part, requested certain changes in the wording of the instructions but, at that time, did not expressly take exception to them.

The parties and the court then engaged in an equally lengthy discussion of the verdict forms, the first and third of which addressed the issue of the parties' comparative fault.[7] The first form asked whether defendant had provided one or more express warranties to plaintiffs; whether defendant had breached the warranty; whether any such breach had caused plaintiffs any damages; whether plaintiffs were negligent in any of the ways alleged in defendant's answer; what percentage of fault was attributable to, respectively, plaintiffs and defendant; and the amount of plaintiffs' damages. With the exception of the question asking the amount of damages, which was omitted, the third form asked the same questions in regard to any warranty provided by defendant to Ramsay-Gerding and instructed the jury to apportion fault three ways. Near the end of that discussion, Ramsay-Gerding reiterated that it was agreeing to the verdict forms in light of the trial court's previous rulings on the comparative fault

---

[6] The trial court separately instructed the jury on the definition of "causation or cause."

[7] The second special verdict form related to the timeliness of the development company's claims.

issue but was not waiving its position on that issue; plaintiffs' counsel stated, "I agree."

Finally, as pertinent to preservation, after the jury returned its verdicts, plaintiffs prepared a form of judgment awarding them the full amount of their damages as found by the jury—$775,000. Defendant objected to plaintiffs' form of judgment and submitted one awarding plaintiffs $271,250— that is, 35 percent of the damages awarded, as provided in the jury's three-way apportionment of fault. Alternatively, defendant argued that it was liable, at most, for 51 percent of plaintiffs' damages as provided in the jury's two-way fault apportionment, or $395,250. In the hearing on the form of judgment, plaintiffs contended that "comparative negligence is not a defense to a breach of warranty. It's simply relevant to the issue of causation. Once you find more than 51 percent, then all of the damages are attributable to that particular defendant." Defendant reiterated that comparative fault is a defense. The trial court ordered a limited judgment awarding plaintiffs $395,250.

Based on all of the above, we conclude that plaintiffs preserved the issue whether the trial court erred in permitting evidence of comparative fault—or, as defendant also styles it, alternative causation; in instructing the jury on that issue; and in entering a judgment that was consistent with the jury's apportionment of fault. It is true that, on several occasions, plaintiffs' counsel failed to join expressly Ramsay-Gerding's counsel's objections and arguments on that issue. However, on at least some of those occasions, the issue was whether evidence of construction defects was admissible to demonstrate Ramsay-Gerding's comparative fault. More generally, plaintiffs' and Ramsay-Gerding's shared position on the issue of comparative fault was evident throughout the trial. Nor was defendant misled or denied an opportunity at any point to meet plaintiffs' argument on the issue. Finally, the trial court expressly stated its own conclusion on the issue at various points—that the issue of the comparative fault of the parties was in the case under defendant's theory of alternative causation. *See State v. Parkins*, 346 Or 333, 339-40, 211 P3d 262 (2009) (where the defendant presented "some argument" to the trial court on the relevant issue and where the trial court "appear[ed] to have understood the

\* \* \* issue to be in play[,]" the policies behind the preservation rule were sufficiently served). Accordingly, the issue was preserved.[8] We therefore turn to the merits.

In 1961, the Oregon legislature enacted this state's version of the Uniform Commercial Code (UCC). Article 2 of the UCC, known as the Uniform Commercial Code—Sales and codified in ORS chapter 72, governs transactions for the sale of goods. ORS 72.1020. We have not found a decision of an appellate court of this state addressing, for purposes of the UCC, the role of a plaintiff's conduct in an action for breach of an express warranty.[9] We therefore begin with an overview of the relevant Article 2 provisions.

Under ORS 72.3130(1)(a), an affirmation of fact or promise made by the seller to the buyer that relates to goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise. Under ORS 72.3130(1)(b), a description of goods that is made part of the basis of the bargain creates an express warranty that the goods will conform to the description. Under ORS 72.7140, where a buyer has accepted goods that are not as warranted by the seller, the buyer may recover as damages the loss resulting in the ordinary course of events from the seller's breach, measured as the difference

---

[8] That is not to say that plaintiffs' assignment of error in this court is a model of compliance with the relevant rules of appellate procedure. Under ORAP 5.45(3), an assignment of error should identify one—and only one—ruling that is being challenged. *See also* ORAP 5.45(4)(a) (an appellant's assignment of error must demonstrate that the issue presented was "timely and properly" raised and preserved in the lower court, by identifying the stage in the proceedings when the issue was raised in the lower court, the method or manner of raising it, and the way in which it was resolved by the lower court). Plaintiffs' assignment, however, encompasses actions taken by the trial court from the hearing on the motion to bifurcate, through the presentation of evidence, to the trial court's instructions to the jury, its entry of judgment, and its denial of the motion for a new trial. To the extent that all of those actions implicated the legal issue that plaintiffs identify, however, that defect, although notable, is not fatal here. *Cf. Strawn v. Farmers Ins. Co.*, 228 Or App 454, 475, 209 P3d 357, *rev allowed*, 347 Or 258 (2009) (where an assignment of error addressed multiple rulings involving different legal issues and different preservation concerns, the court declined to reach all but one of the issues).

[9] Under Oregon common law, fault of a buyer was treated as relevant to a breach of warranty claim against a seller. *See Drake v. Sears*, 8 Or 209, 212 (1880) (An express warranty of an engine was breached when, without negligence or fault of the buyer, the engine failed.).

between the value of the goods accepted and the value they would have had if they had been as warranted, as well as incidental and consequential damages. As pertinent here, incidental damages include the costs of obtaining replacement goods or making repairs necessitated by the breach. ORS 72.7150(1); *see, e.g.*, *McGinnis v. Wentworth Chevrolet Co.*, 295 Or 494, 502-04, 668 P2d 365 (1983) (discussing incidental damages). Consequential damages resulting from a seller's breach of warranty include "[i]njury to * * * property proximately resulting from" the breach. ORS 72.7150(2)(b).

 Neither the cited provisions nor any other provision of ORS chapter 72 expressly provides that a buyer's recovery for losses resulting from a seller's breach of an express warranty is reducible by some measure reflecting wrongful conduct of the buyer or a third party. However, as the quoted provisions make clear, in order to recover damages for injury to property as provided in ORS 72.7150(2)(b), the buyer must demonstrate the existence of proximate cause between the seller's breach and the buyer's loss. *See* Larry Lawrence, *Anderson on the Uniform Commercial Code* § 2-314:612 (3d ed 1996-2002) (the conduct of the plaintiff is a defense to warranty liability to the extent that it shows that the proximate cause of the plaintiff's harm was not the breach of warranty). Thus, consequential damages do not include losses caused by the buyer or losses that the buyer could have prevented. *See* Patricia F. Fonseca and John R. Fonseca, *Williston on Sales* § 25:49 (5th ed 2006) (so stating; such damages "must have proximately resulted from the breach"); Lawrence, *Anderson on the Uniform Commercial Code* § 2-715:70 ("In order for a buyer to recover a loss item as consequential damages, the buyer must establish that the loss was caused by the seller's breach."). "A cause may be 'proximate' as long as it substantially contributes to the ultimate harm, even if it is not the 'sole' or the 'but for' cause." *Id.* § 2-314:618.

 Here, in their second amended complaint, plaintiffs alleged in part that, as a result of defendant's breach of its warranty of the stucco system, plaintiffs incurred "[e]conomic damages in an amount not less than $1,100,000 for the remediation and repair of the subject hotel building, in order to restore the hotel building to the value and condition it would have had if the exterior stucco siding system and the product

applied to the metal flashings had been as warranted by" defendant.[10] Those losses constitute damages—primarily consequential damages—for UCC purposes; accordingly, under ORS 72.7140 and ORS 72.7150, plaintiffs were required to show that the losses resulted from and were proximately caused by defendant's breach. Indeed, in arguing that plaintiffs' and Ramsay-Gerding's conduct was relevant to the question of its liability for plaintiffs' losses, defendant repeatedly contended that the issue of plaintiffs' and Ramsay-Gerding's "comparative fault" went to the element of causation.[11] We conclude that, whether the issue properly is characterized in Oregon as an issue of the parties' comparative fault or negligence, or as one of alternative or comparative causation, the trial court did not err in admitting evidence or instructing the jury on that issue, or in entering judgment and denying plaintiffs' motion for a new trial accordingly.[12]

Moreover, in light of that conclusion, we need not decide whether ORS 31.600—providing that "contributory

---

[10] Plaintiffs further alleged that they incurred "[c]onsequential damages" of not less than $500,000 for lost business profits during the time that the hotel was closed for repairs and for "administrative" costs. The trial court withdrew those damages claims from the jury's consideration.

[11] We note that, in their motion for a new trial, plaintiffs apparently conceded that it was "appropriate" for the trial court to submit to the jury the issue of whether plaintiffs' conduct in relying on defendant's express warranty "precluded a finding that [plaintiffs'] damages proximately resulted from [defendant's] breach of warranty." They then argued that,

"[o]nce the jury determined that [plaintiffs'] conduct did not preclude a finding that their damages proximately resulted from [defendant's] breach of warranty, the jury should not have been allowed to further consider [plaintiffs'] conduct or comparative negligence, and the Court should not have reduced the economic damages awarded by the jury by the percentage of [plaintiffs'] comparative negligence as determined by the jury."

On appeal, however, plaintiffs reprise only their argument that comparative fault is "no part" of a claim for breach of an express warranty. Accordingly, we need not decide whether the trial court erred in reducing plaintiffs' damages by the proportion of plaintiffs' fault. *See, e.g.*, James J. White and Robert S. Summers, *Uniform Commercial Code* § 11-8 (5th ed 1996) (noting that the question whether a plaintiff can be foreclosed from recovery because his or her own action or inaction contributed to the injury is best viewed as an inquiry as to whether the plaintiff's conduct "sufficiently attenuate[d] the causal connection" between the defendant's breach and the plaintiff's damages so as to bar recovery).

[12] *Compare Valley Iron and Steel v. Thorin*, 278 Or 103, 110, 562 P2d 1212 (1977) ("fault" of the buyer is irrelevant in the context of implied warranties).

negligence" is not a bar to recovery of damages for injury to person or property if the "fault" of the plaintiff does not exceed the combined fault of other parties—is applicable to breach of warranty claims. *See* Lawrence, *Anderson on the Uniform Commercial Code* at §§ 2-314:649, 653 (most states have adopted comparative negligence statutes; some apply it to breach of warranty claims and some do not; those that do in effect treat the issue as one of comparative causation or comparative fault).

For all of the above reasons, the trial court did not err in the manner asserted in plaintiffs' first assignment of error.

## C. *Order Granting Plaintiffs' Motion to Bifurcate*

We next consider defendant's fourth assignment of error on cross-appeal, in which it argues that the trial court abused its discretion in granting plaintiffs' motion to bifurcate for a separate trial of their claims for breach of express warranty. According to defendant, separate trial of those claims did not promote convenience or economy, but instead promoted confusion, delay, and substantial prejudice to defendant. According to defendant, the trial lasted much longer than originally estimated and almost as long as the nonbifurcated trial had been estimated to last; bifurcation necessitated the fashioning of multiple special verdict forms; it prevented the jury from allocating fault to other potentially liable parties such as the architects, designer, and inspection contractor on the construction project; and it necessitated a second trial involving those other parties. Defendant contends that, "[w]hen multiple parties are potentially at fault for a loss, a bifurcation order that prevents an allocation of fault to some of those parties is necessarily prejudicial." Defendant also argues that bifurcation was erroneous because it allowed a third-party plaintiff, Ramsay-Gerding, the opportunity to participate in the trial even though defendant's liability to Ramsay-Gerding was contingent on Ramsay-Gerding being found liable to plaintiffs for damages caused by defendant—liability that had not yet been established.

Plaintiffs respond that trial courts have a wide range of discretion in ordering bifurcation and that the trial court

did not abuse its discretion here. Plaintiffs point out that defendant itself sought to try the issue of comparative fault in the context of the breach of warranty claim and that, accordingly, it cannot now complain of the confusion that that issue ostensibly created. Plaintiffs also argue that either possible outcome in the bifurcated proceeding allowed an efficient disposition of the remaining issues: either the jury would find that defendant was not liable to plaintiffs, removing the express warranty issue from the case, or it would find (as it did) that defendant breached its express warranty, allowing an "efficient determination" of any consequent indemnity and contribution claims.

Defendant replies that, notwithstanding any complications arising out of its own introduction of the comparative fault issue into the case, bifurcation was error in this case because it unfairly and prejudicially permitted Ramsay-Gerding to participate in the trial. It also contends that, if comparative fault is a proper defense to a claim for breach of express warranty, a single trial allows one trier of fact to properly allocate fault.

ORCP 53 B provides:

> "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or issues, always preserving inviolate the right of trial by jury as declared by the Oregon Constitution or as given by statute."

Bifurcation of issues for trial is not to be ordered routinely; rather, a decision to bifurcate should be made only as a result of an informed exercise of discretion in which the trial court determines that bifurcation will promote one or more of the purposes of the rule. *Bremner v. Charles*, 312 Or 274, 279, 821 P2d 1080 (1991), *adh'd to on recons*, 313 Or 339, 832 P2d 454 (1992), *opinion adh'd to, disposition modified on recons*, 315 Or 291, 844 P2d 204 (1993). The trial court has broad discretion regarding whether to bifurcate; we review its decision for an abuse of discretion. 312 Or at 278; *see also Weiss v. Northwest Accept. Corp.*, 274 Or 343, 356, 546 P2d 1065

(1976) (The trial court has a wide range of discretion in making rulings that concern administration of the court's business.).

■ Here, we cannot say that the trial court abused its discretion in granting the motion to bifurcate. Although defendant sought to allocate fault not only among the parties to the breach of warranty claims—plaintiffs, Ramsay-Gerding, and itself—but also to entities that were not parties to those claims, it is not precluded from doing so in the trial of the remaining claims; defendant concedes as much, objecting primarily to the fact that a second, equally "protracted" trial will be needed for that purpose. Nor did the trial court abuse its discretion by reason of the fact that a separate trial on the breach of warranty claim ultimately proved not to have promoted convenience or economy, assuming that is the case. In short, separate trial of the breach of warranty claims was not reversible error. We therefore reject defendant's fourth assignment of error on appeal.

## D. *Entry of Judgment Not Consistent With Verdict*

Finally, we consider defendant's third assignment of error, in which it asserts that the trial court erred in entering a judgment that did not conform to the jury's verdict. As previously described, the trial court ultimately presented to the jury two special verdict forms in which the issue of the parties' comparative fault, among other issues, was presented. The first form queried the jury as to defendant's liability to plaintiffs and directed it to allocate fault, if any, as between plaintiffs and defendant. The second of those forms queried the jury as to defendant's liability to Ramsay-Gerding and directed it to allocate fault, if any, among all three parties— plaintiffs, Ramsay-Gerding, and defendant.[13] However, it is significant that the trial court did not submit the second form to the jury until after the jury had made the findings required by the first form. As the court explained to counsel out of the presence of the jury, "The jury, I believe, at this stage needs

---

[13] As previously discussed, those two special verdict forms were numbered 1 and 3, respectively; special verdict form number 2 pertained to the timeliness of the development company's breach of warranty claim against defendant. For convenience, we refer to the verdict forms and verdicts at issue in this assignment of error as the first and second forms and verdicts.

to address the issue \* \* \* as between [defendant] and Ramsay-Gerding in light of the verdict" for plaintiffs. The trial court proposed to counsel that the court tell the jury that the questions in that form were necessitated by "the impending indemnity claim that exists and the status of the pleadings as between the parties"—the latter referring, apparently, to defendant's affirmative defense alleging that plaintiffs' damages were caused by Ramsay-Gerding's negligence in constructing the hotel. The trial court did not mention the "impending indemnity claim" to the jury, but merely explained that Ramsay-Gerding also had alleged a claim for breach of an express warranty against defendant and that it was the jury's task to determine whether that allegation had been proved, as well as to allocate fault among all three parties.

As previously described, in the first special verdict, the jury determined that defendant had breached a warranty provided to plaintiffs and allocated fault between those two parties. In the second special verdict, the jury determined that defendant had breached one or more warranties provided to Ramsay-Gerding and allocated fault among all three parties. After receiving the special verdicts, the trial court informed the jury that other parts of the case remained to be tried separately.

Relying on *Oregon Azaleas, Inc. v. Western Farm Service, Inc.*, 65 Fed Appx 101 (9th Cir 2003), plaintiffs prepared a form of judgment that awarded them their entire damages, $775,000.[14] Defendant urged the trial court to enter a judgment consistent with the second of the two relevant special verdicts, in which the jury found that defendant was responsible for only 35 percent of plaintiffs' damages. The trial court instead rendered a judgment that was consistent with the jury's first special verdict—that is, that awarded plaintiffs 51 percent of their damages.

---

[14] In *Oregon Azaleas*, the court, applying Oregon law in an unpublished decision, held that the trial court had erred in instructing the jury as to the tort concept of comparative negligence with respect to consequential damages from a breach of an express warranty. According to the appeals court, the seller was liable for the damage caused by its breach "unless the causal chain was broken by the unreasonable failure" of the buyer to discover the defect.

According to defendant, in light of the special verdict allocating fault among all three parties, that apportionment of plaintiffs' damages was error. Plaintiffs first respond that it was not error to, in effect, ignore the jury's three-way apportionment of fault because comparative fault is in all events irrelevant to a claim for breach of an express warranty. Plaintiffs also contend that, even assuming that some apportionment of fault was proper, entry of a limited judgment based on the jury's two-way apportionment was not error because the judgment in this case resolved only plaintiffs' claim against defendant; conversely, apportionment of fault as between defendant and Ramsay-Gerding properly must be accomplished in a separate proceeding. Plaintiffs further contend that this court effectively has made the adjudication of only their claim, and not that of Ramsay-Gerding, the "law of the case" by dismissing Ramsay-Gerding's appeal.

In reply, defendant notes that giving effect to the second of the two apportionment verdicts would afford plaintiffs a greater total recovery of its damages (that is, 35 percent from defendant and 35 percent from Ramsay-Gerding). It also contends that an apportionment that includes Ramsay-Gerding is "no more problematic" than the fault allocations that typically occur in cases in which one party is subject to strict liability and other parties are liable by reason of negligence.

We have not identified any decision of the appellate courts of this state addressing the question presented here— namely, in the absence of a general verdict, which of two alternative and conflicting special findings, neither of which is contrary to the evidence, should be given effect. *See* ORCP 61 (setting out procedures for use of general verdicts, special verdicts, and general verdicts with interrogatories). *Cf. Whelpley v. Frye, Adm'x*, 199 Or 530, 539, 263 P2d 295 (1953) (When the jury's answer to one interrogatory comported with the undisputed evidence at trial and the answer to a second interrogatory was opposed to that evidence and was "plainly opposed to reason," the trial court disregarded the latter.); *Abraham v. Mack et al.*, 130 Or 32, 43, 273 P 711, 278 P 972 (1929) (When facts specially found are inconsistent with each other and the general verdict, judgment must be rendered consistently with the general verdict and without regard to

the special findings.); *Forest Products Co. v. Dant & Russell*, 117 Or 637, 645-46, 244 P 531 (1926) (special findings that are irreconcilable with a general verdict control the general verdict; a special finding is inconsistent with a general verdict when, as a matter of law, the former authorizes a different judgment from that authorized by the latter).

Even assuming, however, that the first and second apportionment-related special verdict findings in this case are each supported by the evidence and are irreconcilable with each other, we cannot say that the trial court erred in rendering judgment consistently with only the first. As described above, the second of the two special verdicts relating in part to the apportionment of fault was not presented to the jury until after it had returned a special verdict finding that defendant had provided and breached a warranty to plaintiffs, that the breach had caused damage to plaintiffs in the amount of $775,000, and that plaintiffs' own negligence was a cause of 49 percent of their damages. Although the trial court did not expressly inform the jury of the function of the second special verdict form, it is clear from the record that the trial court intended the second special verdict as merely preliminary factfinding relevant to a later trial of defendant's claim against Ramsay-Gerding for indemnity. Under that circumstance, the trial court did not err in entering a judgment that was consistent with the first special verdict and in declining to do so with regard to the second special verdict.

Affirmed on appeal and on cross-appeal.