Argued and submitted September 30, 2013, reversed and remanded
February 12, 2014

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSEPH PATRICK OHOTTO,
*Defendant-Appellant.*

Josephine County Circuit Court
100746M; A148725

323 P3d 306

Elizabeth G. Daily, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Schuman, Senior Judge.*

DEVORE, J.

---
* DeVore, J., *vice* Wollheim, J.

**DEVORE, J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010(1).[1] Defendant assigns error to the trial court's ruling admitting a deputy's testimony regarding the rate of absorption and elimination of alcohol in an individual's blood. Defendant argues that the state failed to establish the foundation needed to admit scientific evidence and that the deputy did not have the expertise to offer that evidence. The state argues that the issue was not preserved for appeal, that the deputy's expertise sufficed, and that any error was harmless. We reverse and remand.[2]

We review rulings as to whether evidence is scientific and whether it is admissible as such for errors of law. *State v. Helgeson*, 220 Or App 285, 290, 185 P3d 545 (2008) (citing *State v. Owens*, 207 Or App 31, 37, 139 P3d 984 (2006), *rev den*, 342 Or 503 (2007)). We also review the admissibility of expert testimony for legal error. *State v. Dunning*, 245 Or App 582, 589, 263 P3d 372 (2011).

At 2:23 p.m. on a Friday afternoon, a United States Forest Service deputy noticed defendant and defendant's friend, Bandy, cutting firewood next to a Jeep in a public campground. Upon investigation, the deputy observed that defendant was visibly intoxicated. Defendant told the deputy that defendant had driven to the campground and had been there for only 15 minutes. The deputy noticed one beer can on the ground but did not see any others. At the scene and at trial, defendant claimed that he did not drink alcohol before driving to the campground, but, at the scene, he allowed that he had consumed four or five beers earlier in the day. Bandy told the deputy that defendant had consumed only

---

[1] ORS 813.010(1) provides, in relevant part:

"A person commits the offense of [DUII] if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath * * *; [or]

"(b) Is under the influence of intoxicating liquor * * *[.]"

[2] Defendant also assigns error to the court's ruling on his objection to the state's closing argument as a personal attack against defense counsel. Given that we reverse, the issue becomes moot.

one beer since arriving at the campground. He estimated that defendant had been there for only 15 minutes. After partially completing field sobriety tests, the deputy arrested defendant for DUII and transported him to the Josephine County Jail for a breath test. That test recorded that defendant's blood alcohol content (BAC) was .17 percent at 4:03 p.m.

At trial, defendant recounted that he had been at the campground for 45 minutes or an hour and that he had consumed "four or five beers" and a couple of shots of whiskey while there. The state recalled the deputy on rebuttal to testify to the absorption and elimination of alcohol in an individual's blood and to the corresponding BAC. Defendant unsuccessfully objected to the deputy's testimony. The deputy testified to the rate of absorption for alcohol in the blood per standard alcoholic beverage ingested; the rate of elimination of alcohol in the blood over time; and the amount of alcohol defendant would have had to consume to reach a .17 percent BAC as compared to an adult of another size or sex.[3] The deputy concluded that, in order to reach defendant's breath test results, defendant "would have had to have consumed a significant amount of alcohol, certainly more than what he's indicated * * *." The jury found defendant guilty, and the court entered a judgment of conviction.

The state argues that defendant did not properly preserve for appeal his contentions concerning whether the deputy's testimony was admissible as scientific evidence and whether the deputy was qualified to testify as an expert. "Ordinarily, this court will not consider an issue on appeal unless it was first presented to the trial court." *State v. Whitmore*, 257 Or App 664, 665, 307 P3d 552 (2013); *see also Kaptur and Kaptur*, 256 Or App 591, 594, 302 P3d 819 (2013); ORAP 5.45(1). At trial, a party must raise an issue with "enough particularity to assure that the trial court was able to identify its alleged error so as to consider and correct the error immediately, if correction is warranted." *Kaptur*, 256 Or App at 594 (internal quotation marks omitted).

---

[3] The deputy's testimony relied heavily on the National Highway Traffic Safety Association (NHTSA) manual.

When the deputy began to address the BAC topic, defendant objected, saying:

> "This is scientific evidence that Officer Thomas does not have the—the—there is no foundation laid for him to be able to get this testimony. As to the correlation of alcohol consumption and the actual blood alcohol number."

The trial court responded that

> "this is * * * in the in-between-land between scientific evidence and * * * lay opinion evidence. And it's come up before, and I think that an officer with this officer's background probably is entitled to testify about the amount of alcohol that it would take to get to a .17, so long as there's adequate foundation laid. * * * I think there's been enough foundation as to his experience."

The state indicated that the deputy would testify as to both absorption and elimination rates of alcohol in the blood. The court determined that the state was also permitted to pose questions regarding "dissipation rates" of alcohol. Defendant's objection to "foundation" and to "correlation" addresses the scientific nature of the evidence—a calculation used to determine defendant's alcohol consumption based on his BAC at a particular point in time. That objection is the same argument that defendant advances on appeal. Defendant presented that argument to the court with enough particularity to satisfy preservation requirements.

Defendant's argument that the deputy was not qualified to testify as an expert is a closer question of preservation. Defendant's objection was incomplete: "This is scientific evidence that Officer Thomas does not have the—the—* * *." After the court's rulings, defendant asked, "Is he qualified to—," before being cut short by the court as the jury returned. Preservation requirements serve a practical purpose, that is, "to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Whitmore*, 257 Or App at 666 (quoting *Taylor v. Ramsay-Gerding Construction Co.*, 233 Or App 272, 283, 226 P3d 45, *adh'd to as modified on recons*, 235 Or App 524, 234 P3d 129 (2010) (internal quotation marks omitted)). We are also mindful

that "[p]articularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated shorthand references suffice to put all on notice about the nature of a party's arguments." *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011). The trial court addressed both foundational requirements as to the evidence as scientific, as well as the deputy's qualification to testify as to that evidence based on his experience. It is evident from the court's response that the court understood defendant's objection to include the deputy's qualifications as an expert.

We proceed to the merits of defendant's argument that the deputy's testimony was scientific in nature and lacked a proper foundation. "[T]he key question in determining whether proffered testimony is 'scientific,' and thus requires a special foundation, is whether the expert's assertions possess significantly increased potential to influence the trier of fact as scientific assertions." *State v. Rambo*, 250 Or App 186, 193, 279 P3d 361 (2012), *rev den*, 353 Or 203 (2013) (quoting *State v. Marrington*, 335 Or 555, 562, 73 P3d 911 (2003) (internal quotation marks omitted)). "[A]dmissibility of scientific evidence requires a showing that it is based on scientifically valid principles." *State v. O'Key*, 321 Or 285, 301-02, 899 P2d 663 (1995).

This court addressed a similar problem in *Whitmore*, 257 Or App 664, a case in which the defendant was convicted of driving under the influence. The state had presented a forensic scientist's testimony regarding "studies concerning the rates at which the blood absorbs and eliminates alcohol * * *." *Id.* at 666. The expert offered testimony regarding use of the Widmark formula, which is used to "calculate the number of alcoholic beverages consumed by an individual based on * * * BAC, a process known as 'retrograde extrapolation.'" *Id.* The expert determined that a 185-pound man who consumed alcohol within a specific time span would have had to have consumed between 7 and 10.5 drinks for a BAC of .08 percent at the time of the defendant's breath test. *Id.* This court concluded that "[t]he trial court erred in not requiring the state to show that [the expert's] methods were scientifically valid" pursuant to foundational requirements for scientific evidence. *Id.* at 672.

In this case, the deputy's testimony about the amount of alcohol that defendant would have had to have consumed for a breath test to register a .17 percent BAC closely mirrored the Widmark formula and retrograde extrapolation applied by the forensic scientist in *Whitmore*. The deputy testified that his knowledge stemmed from the NHTSA manual. On cross-examination, the deputy conceded that calculating specific hypothetical absorption rates of alcohol involves "scientific stuff that [he] certainly [doesn't] understand." Here, too, "[t]he trial court *** had a duty to ensure that [the witness's] methods possessed the requisite indices of scientific validity." *Id.* at 672. As in *Whitmore*, the deputy's testimony was scientific evidence and required the state to establish a proper foundation.[4] We conclude that the deputy's testimony possessed "significantly increased potential to influence the trier of fact as scientific assertions." *O'Key*, 321 Or at 292; *Marrington*, 335 Or at 562.

We also conclude that the deputy was not qualified to testify as an expert in alcohol absorption and elimination rates.[5] Oregon's evidence code requires that scientific evidence must be proffered by "a witness qualified as an expert by knowledge, skill, experience, training or education ***." OEC 702. "Proper application of OEC 702 requires assessment of the particular qualifications of each witness." *State v. Rogers*, 330 Or 282, 316, 4 P3d 1261 (2000).

The trial court determined that "this is *** in the in-between-land between scientific evidence and *** lay opinion evidence" and that the deputy's training and expertise was sufficient to testify to rates of alcohol absorption and elimination. The court reasoned that "an officer with this officer's background probably is entitled to testify about the amount of alcohol that it would take to get to a .17 [percent BAC]" and determined that "there's been enough foundation as to his experience."

---

[4] For the purposes of this case, we need not repeat the factors aiding in a court's determination of scientific evidence's reliability and validity, set forth by the Supreme Court. *See State v. Brown*, 297 Or 404, 407, 687 P2d 751 (1984); *O'Key*, 321 Or at 299-300.

[5] The deputy's background included 17 years in law enforcement and experience with 1,000 DUII investigations. He completed a NHTSA DUII course several times.

"Based on * * * training and experience, police officers can—and frequently do—testify as to their opinions of whether an individual was under the influence of alcohol or a controlled substance." *Rambo*, 250 Or App at 194. However, the dispute in this case is not whether defendant was intoxicated or whether his BAC exceeded a legal limit, but rather whether he could have reached a .17 percent BAC at 4:03 p.m. if he had only consumed "four to five drinks" and a "couple shots of whiskey." That evidence required a complex understanding of how defendant's BAC would have changed over time. The deputy's testimony is qualitatively different from lay observations as to a person's relative state of intoxication, because the deputy's testimony expressed scientific opinion that required a proper foundation. The testimony in question was not, as the state argues, limited to the deputy's training and prior experience as a police officer. It required a formulaic calculation derived from scientific understandings of physiological processes that cannot be achieved through reading a training manual, conducting routine DUII investigations in the course of law enforcement, and attending an NHTSA course.[6] To offer such scientific evidence a witness must qualify as an expert. *Dunning*, 245 Or App at 589-90. Here, the record does not suggest that the deputy had "the stuff of expertise * * *." *Id.* at 591. The court erred in admitting the deputy's testimony because the state failed to establish a sufficient foundation for expertise in the field through an assessment of the deputy's particular qualifications.

The state contends that any error was harmless. An evidentiary error does not require reversal unless the error is prejudicial. OEC 103(1). An error is harmless if there is little likelihood it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In making that determination, we consider the possible influence of the error on the verdict. *Id.*

---

[6] The deputy referred to "accepted" rates of absorption and elimination of alcohol from one's blood, suggesting a consensus among a scientific community, and he referred to "serious math" required in specific hypothetical calculations. *See Rambo*, 250 Or App at 195 (concluding that the officer "apart from his reference to independently admissible scientific tests—[did not] rely on the vocabulary of science, nor did he suggest that his conclusions had been reached through the application of a scientific method to collected data").

To prove the offense, the state needed to establish that defendant drove while he was intoxicated. Both defendant and Bandy gave testimony that was inconsistent with statements that they made to the deputy during the investigation at the campground. They sought to raise doubt that defendant drove while intoxicated. The state sought to demonstrate that defendant's account at trial was false or, at least, to challenge defendant's altered recollection of events. To contradict defendant, the deputy estimated the number of drinks defendant would have had to have consumed at the campground to reach a .17 percent BAC at the time of the breath test. The impeachment was scientific evidence intended to show that defendant could not be telling the truth at trial. On this record, we cannot conclude that there was little likelihood that the deputy's testimony affected the verdict.

Reversed and remanded.